COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Bray and Senior Judge Duff
Argued at Alexandria, Virginia


BRENT ARTHUR M. WHITAKER

v.   Record No. 1790-95-4          MEMORANDUM OPINION[*] BY
                                 CHIEF JUDGE NORMAN K. MOON
COMMONWEALTH OF VIRGINIA              JUNE 4, 1996


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   M. Langhorne Keith, Judge

        Judith M. Barger, Assistant Public Defender
        (Clinton O. Middleton, Senior Assistant
        Public Defender; Office of the Public
        Defender, on brief), for appellant.

        Monica S. McElyea, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.



     Brent Arthur M. Whitaker was convicted of malicious

wounding, and sentenced in accordance with the jury's verdict to

six years in the penitentiary.  Whitaker argues on appeal that

the trial court improperly denied him a jury instruction on

self-defense.  He also argues that the trial court erroneously

permitted the jury to consider evidence, during the sentencing

phase of the proceeding, of two felony convictions for breaking

and entering and one felony conviction for grand larceny.  We

affirm the conviction and sentence.

     On February 2, 1995, Fairfax Police Officer Elizabeth

Eppright was on foot patrol at a shopping center.  She was in

uniform and carrying a gun and a police radio.

_____

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Officer Eppright testified that she was walking in front of the shopping center, about thirty yards from the entrance to a drugstore, when she saw Whitaker and two other young males running out of the drugstore carrying beer. As they continued to run, Officer Eppright ran after them and yelled "Stop, police" several times. The three turned to look at her, and then continued running across the front of the shopping center. They turned after the last store and ran to the back of the shopping center. Officer Eppright pursued them and saw them standing in back of the store, Whitaker at the top of a small incline and the other two below him. Officer Eppright acknowledged that Whitaker appeared to have stopped in compliance with her order, but the other two appeared uncertain of whether to stay or continue running. Eppright testified that although it was dark outside, she had no trouble seeing due to streetlights and lights on the rear of the building.

Officer Eppright approached Whitaker and grabbed him by the shoulders. As she took Whitaker's shoulders, she turned to his companions and told them that they had better stop as well. Whitaker then hit her in the eye, grabbed her, pulled her towards him and kicked and struck her repeatedly. Officer Eppright fell to the ground. She then radioed for assistance and pulled her gun. She stood up and was face-to-face with Whitaker. She held onto him and told him, "I'm going to shoot you." The gun became stuck between Whitaker's left arm and his side. He continued to kick Eppright, and told her to go ahead and shoot. She managed

to free the gun and shot Whitaker.  She testified that Whitaker was standing sideways to her when she fired.

Whitaker acknowledged that he and his friends had stolen the beer.  He testified that Eppright shouted "Stop, boys, stop" and that he did not know that she was a police officer, but instead thought that she worked for the drugstore.  He stated that he dropped the beer as she came around the corner, and planned to give the beer back so that she would let him go.  He claimed that Eppright slammed into him, grabbed him by the shoulders, shook him, and shouted obscenities.  He shook her back and they got into a "little struggle."  He claimed that he hit Eppright once after she drew her gun, because he was scared.  He then tried to flee, took two or three steps, and was shot.  Whitaker stated that he was shot in the back; expert testimony showed that the shot went through the lower left back of Whitaker's jacket.

Whitaker was charged with malicious wounding of a law enforcement officer.  He requested an instruction on self-defense where the defendant was to some degree at fault, as well as an instruction on the use of force to repel an assault.[1]  The trial

_____

[1] The proposed instructions read as follows:

H.   If you believe from the evidence that the
     defendant was to some degree at fault in
     provoking or bringing on the difficulty, and
     if you further believe that when attacked:
     (1)  he retreated as far as he safely could
     under the circumstances;
     (2)  in a good faith attempt to abandon the
     difficulty; and
     (3)  made known his desire for peace by word
     or act; and
     (4)  he reasonably feared, under the

court indicated initially that it would allow the self-defense instruction, but not the other instruction because it was redundant. On further review, the court decided to deny both instructions. The jury convicted Whitaker of the lesser included offense of malicious wounding.

At the sentencing phase, the Commonwealth introduced evidence of several juvenile convictions, including two for breaking and entering and one for grand larceny. For the breaking and entering convictions, the record indicated that counsel was appointed and that Whitaker pled guilty, withdrew his plea, and then re-entered it. He was remanded to the Department of Corrections for twelve months. For the grand larceny conviction, the record indicated simply that Whitaker waived counsel, with no information on the surrounding circumstances. Whitaker pled guilty and was ordered to make restitution and perform community service.

### JURY INSTRUCTIONS

A party is entitled to have the jury instructed according to the law favorable to his or her theory of the case if credible

---

circumstances as they appeared to him, that he was in danger of bodily harm; and (5) he used no more force than was reasonably necessary to protect himself from the threatened harm, then you shall find the defendant not guilty.

J. A person in reasonable apprehension of bodily harm by another is privileged to exercise reasonable force to repel the assault, but the amount of force must be reasonable in relation to the perceived threat.

evidence in the record supports the instruction. See Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991); Belfield v. Commonwealth, 11 Va. App. 310, 313, 398 S.E.2d 90, 92 (1990). Where evidence tends to sustain both the prosecution's and the defense's theory of the case, the trial court must give requested instructions covering both theories. Diffendal v. Commonwealth, 8 Va. App. 417, 422, 382 S.E.2d 24, 26 (1989). In determining whether a jury instruction was properly refused, we view the evidence in the light most favorable to the party who offered the instruction. See Martin v. Commonwealth, 13 Va. App. 524, 526, 414 S.E.2d 401, 401 (1992) (en banc).

A person who reasonably apprehends bodily harm by another is privileged to use reasonable force in self-defense. Foster, 13 Va. App. at 383, 412 S.E.2d at 200; Diffendal, 8 Va. App. at 421, 382 S.E.2d at 25. This includes the right to defend against aggression by a police officer in certain circumstances, including where, as here, the defendant was allegedly unaware of the officer's status and was placed in fear of bodily harm. See Delacruz v. Commonwealth, 11 Va. App. 335, 398 S.E.2d 103 (1990).

"Justifiable" self-defense arises when the defendant is completely without fault in precipitating the incident. "Excusable" self-defense arises when the defendant, who was at some fault in precipitating the incident, abandons the fight and retreats as far as he safely can before he attempts to repel the attack. Foote v. Commonwealth, 11 Va. App. 61, 68, 396 S.E.2d 851, 855 (1990). The instruction offered by Whitaker was for

"excusable" self-defense--properly so, as his unlawful conduct in stealing the beer precipitated the conflict between himself and Officer Eppright.[2]

Even when viewed in the light most favorable to the defendant, the evidence does not support the proposed instruction on self-defense. Whitaker did not retreat as far as he safely could under the circumstances; indeed, he did not retreat at all before striking Officer Eppright, but immediately began to grapple with her when she tried to apprehend him. Similarly, he did not make known a desire for peace or make a good faith effort to abandon the difficulty--when Officer Eppright shook him, as he claimed, he immediately responded in kind and then struck her. The trial court did not err in refusing to grant the proposed instruction.

USE OF PREVIOUS CONVICTIONS AT SENTENCING

It is now well established that uncounseled misdemeanor convictions can be considered for sentencing purposes. Nichols v. United States, ___ U.S. ___, 114 S. Ct. 1921, 1927-28 (1994); see also Griswold v. Commonwealth, 21 Va. App. 22, 461 S.E.2d 592

---

[2] Whitaker complains primarily of the trial court's failure to grant the self-defense instruction, but also refers to the court's failure to grant the instruction on use of force. The self-defense instruction covered the appropriate use of force where the defendant was at fault. Even if the trial court erred in refusing the instruction on self-defense, which it did not, there would be no error in refusing the second instruction. "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." Gray v. Commonwealth, 233 Va. 313, 351, 356 S.E.2d 157, 177-78, cert. denied 484 U.S. 873 (1987).

(1996).  However, this principle does not apply to felonies.  In felony cases, the defendant has the right to counsel unless that right is intelligently and competently waived.  Nichols, 114 S. Ct. at 1926 n.9 (citing Gideon v. Wainwright, 372 U.S. 335 (1963)).  A sentence that is based on a prior felony conviction invalid under Gideon must be set aside.  Id. (citing United States v. Tucker, 404 U.S. 443, 446–47 (1972)); see also James v. Commonwealth, 18 Va. App. 746, 752, 446 S.E.2d 900, 904 (1994).

Whitaker did not appeal his convictions directly based on lack of counsel, but instead seeks to attack them collaterally in this proceeding.  In the context of a collateral attack, a "presumption of regularity" attaches to the judgment of conviction, even where the question is waiver of constitutional rights.  Parke v. Raley, 506 U.S. 20, 29–30 (1993).  The Commonwealth has the burden of going forward with evidence showing the previous convictions, which burden it satisfied here through production of certified court records of convictions appearing on their face to be valid.  James, 18 Va. App. at 752, 446 S.E.2d at 904; see Code § 19.2–295.1.  There must be some evidence establishing that the defendant was represented by counsel or had properly waived counsel in the earlier criminal proceeding.  Id. (citing Burgett v. Texas, 389 U.S. 109, 114 (1967)).  Once the Commonwealth has made this showing, the presumption of regularity applies to the convictions and the defendant must produce credible evidence of a constitutional violation in order to invalidate them.  Id.

Here, as in <u>James</u>, the record of conviction for the breaking and entering charges indicated that Whitaker was represented by counsel. Although the record does not affirmatively show that counsel was present when the guilty plea was re-entered, such evidence is not necessary under <u>Parke</u> and <u>James</u>. Whitaker presented no evidence that he was unrepresented by counsel when he entered his guilty plea. The trial court therefore did not err in allowing the jury to consider these convictions for sentencing purposes.

For the conviction of grand larceny, the record indicated that Whitaker waived counsel. In the context of a collateral attack, this evidence is sufficient to trigger the presumption of regularity. Whitaker presented no evidence to rebut the presumption. Accordingly, the trial court did not err in allowing the jury to consider this conviction for sentencing purposes.[3] For these reasons, we affirm Whitaker's conviction.

<u>Affirmed.</u>

---

[3] Whitaker argues that the grand larceny conviction was inadmissible because the records did not show a "final order of conviction." The records showed that Whitaker pled guilty and was ordered to perform community service and make restitution and was placed on supervised probation. The judge also checked off a box indicating that "imposition of any and all other dispositions is withheld indefinitely." While the form is somewhat ambiguous, it indicates a guilty plea followed by imposition of a penalty, and the record of conviction was admissible under Code § 19.2-295.1.